## Reineman *versus* Robb.

1. The assignee of a mortgage takes the same subject to all equities between the mortgagor and mortgagee, but not subject to the equities between the mortgagor and a prior assignee of the mortgage.

2. A., having purchased a tract of land, paid one-half the purchase money in cash, and gave a mortgage on the tract for the remaining moiety.   Subsequently A., by unrecorded articles of agreement, sold an undivided half interest in the tract to B., B. covenanting, in consideration of the transfer of said undivided half interest, to pay the mortgage when due.   When the mortgage became due, B. paid the amount thereof to the mortgagee and took an assignment thereof.   Subsequently he assigned the same to C., who had no notice of the agreement between A. and B. A scire facias being subsequently issued on the mortgage by C., against A. *Held,* that C. took subject to the equities of A. derived from the agreement with B., which equities were to be regarded as between the mortgagor and mortgagee, and that defendant was therefore entitled to judgment.

[Reineman v. Robb.]

October 4th 1881. Before Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ. Sharswood, Ch. J., absent.

Error to the Court of Common Pleas, No. 1 of *Allegheny county*: Of October and November Term 1881, No. 171.

Scire facias sur mortgage, by J. Harvey Robb, administrator of Benjamin Morrow, for use of A. S. Bell, now for use of Pittsburgh Bank for Savings, against Adam Reineman.

On the trial, before Collier, P. J., there was no dispute as to the facts, which were as follows:

The mortgage in suit was given October 20th 1866, by Adam Reineman to J. H. Robb, administrator of Benjamin Morrow, for $2,705.98, payable within one year from interest, being the balance of purchase money due by said mortgagor upon the mortgaged premises, consisting of a tract of coal, underlying the farm of the said Benjamin Morrow, deceased, which coal had been sold by Robb, as administrator, by order of the Orphans' Court, and purchased by Reineman. Reineman paid one-half of the purchase money in cash.

On December 14th 1866, Reineman agreed to sell to John M. Tiernan and A. S. Bell, one undivided half of the said coal, in consideration of Bell and Tiernan assuming payment of the said mortgage; whereupon the following agreement was executed under seal by Reineman, Tiernan and Bell:

"It is agreed hereby between the undersigned, that they jointly own the coal underlying the farm of the late Benjamin Morrow, in Scott township, Allegheny county, Pennsylvania, sold to Adam Reineman by J. Harvey Robb, administrator of said Benjamin Morrow, at Orphans' Court sale, upon the 6th day of last October. The aforesaid coal is fifty-four acres and nineteen perches (54 a., 19 p.) and is to be owned one-half by Adam Reineman, and the other half by John M. Tiernan and A. S. Bell; but the deed for it is to Adam Reineman.

"Adam Reineman has paid the one-half of the purchase money, amounting to twenty-seven hundred and five 98-100 dollars, and given his bond and mortgage for the balance, payable in one year; said bond and mortgage are dated the 20th day of October, A. D. 1866.

"John M. Tiernan and A. S. Bell are to pay said bond and mortgage when it becomes due; and they hereby agree to pay the same promptly when due.

"The coal aforesaid is to be held by the parties hereto, and to be sold for joint benefit, when they think it advisable to sell it and can be done with profit to the undersigned."

"We do hereby agree to the above for ourselves, our heirs,

executors, administrators and assigns. Witness our hands and seals this fourteenth day of December, 1866."

This agreement was not recorded.

After the mortgage fell due, A. S. Bell, on November 16th 1867, paid off the mortgage to Robb, administrator, but instead of having the same satisfied of record, took an assignment thereof to himself, which was, on December 9th 1867, duly entered on the margin of the recorded mortgage.

On December 9th 1867, A. S. Bell, assigned of record the said mortgage to the Pittsburgh Bank for Savings for a valuable consideration, Bell being at that time one of the directors of said bank. No inquiry was made by the Bank of Reineman at the time of their purchase of the mortgage and no certificate of no defence was demanded by the bank. Bell paid the interest on the mortgage, until December 1873 (the mortgage having been extended on the books of the bank), after which time a director of the bank said to Mr. Reineman it was strange that a man of his financial standing should have a mortgage of that amount running so long. The bank then learned for the first time of the agreement between Reineman and Bell and Tiernan. Reineman then first discovered that the mortgage had been kept alive and assigned to the bank.

By agreement of counsel, the court instructed the jury to find a verdict for the plaintiff subject to the opinion of the court on on the question of law reserved, to wit, " whether under all the evidence, which is undisputed, the plaintiff is entitled to recover."

The court, after argument, entered judgment on the reserved point and on the verdict for plaintiff, COLLIER, P. J., filing the following opinion :

"The agreement between Reineman and Bell and Tiernan, set up as a defence, not having been recorded, did not lie in the chain of title under which the bank claimed as a purchaser, under the recording acts ; and therefore it could not be charged with *constructive notice.* Nor do we think that the fact that A. S. Bell was a director at the time the bank purchased the mortgage, and was present thereat, is sufficient to charge the bank with notice : Custer *v.* Bank, 9 Barr 27.

" But it is contended that the bank was bound to make inquiry of Reineman, whether he had any defence to the mortgage. It is true that the bank, by not making inquiry, took the risk of equities, failure of consideration, and set-off, between the mortgagor and mortgagee : Downey *v.* Tharp, 13 Smith 322 ; Taylor *v.* Gitt, 10 Barr 431.

" But we think it clear by the authorities that the bank was not bound to make inquiry as to equities between Reineman

[Reineman v. Robb.]

and Bell, the first assignee: Blair *v.* Mathiott, 10 Wright 263; Downey *v.* Tharp, 13 Smith 322.

"But it is further contended that the agreement between Reineman and Bell and Tiernan, was a payment of the mortgage by Reineman. We do not so regard it. We think, at most, it was a covenant by Bell and Tiernan to pay the mortgage, and then they to become absolute owners of the land.

"We are therefore of the opinion that the bank, having given value for the mortgage, is entitled to recover. . . . . Let judgment be entered for the plaintiff on the verdict."

The defendant took this writ of error, assigning for error the entry of judgment on the reserved question for the plaintiff.

*J. L. Koethen* and *C. Hasbrouck,* for the plaintiff in error.— Upon payment of the mortgage by Bell, it was ipso facto satisfied, so far as the mortgagor's liability was concerned. A mortgage cannot, like a bill of exchange, be revivified after payment, by assignment to a bona fide holder. Bell had no right of recovery on the mortgage against Reineman, and could convey no better title to an assignee of the mortgage, who omitted to make inquiry of the mortgagor, where such inquiry would have developed the fact that the mortgage was paid. In such case, the assignee of the mortgage takes it subject to all the equities of the mortgagor existing at the time of the assignment. Bell's right, after the assignment of the mortgage to him, was an equitable interest in the mortgaged premises, and not in the mortgage. Hence, he stood in the position of one, who purchases land, subject to an existing mortgage, which he assumes to pay as part of the purchase money. Such a purchaser cannot take an assignment of the mortgage and again assign it, so as to give his assignee a right to recover against the mortgagor: Sellers *v.* Benner, 13 Norris 207.

*Sutton* (with him *Plumer* and *C. Magee*), for the defendant in error.—The question is, to what penalty is the assignee of a mortgage liable for not making inquiry of the mortgagor? He is subject to set-off, or want of consideration, or other equities existing between the *mortgagor and the mortgagee* at the time of the assignment. He is not affected by any agreement between the mortgagor and *strangers:* Davis *v.* Barr, 9 S. & R. 141; McMasters *v.* Wilhelm, 4 Norris 218; Blair *v.* Mathiott, 10 Wr. 262; Downey *v.* Tharp, 13 P. F. Smith 322.

Mr. Justice PAXSON delivered the opinion of the court, November 7th 1881.

The Pittsburgh Bank for Savings, the equitable plaintiff be-

[Reineman *v.* Robb.]

low, purchased the mortgage in controversy from A. S. Bell, who was assignee of the mortgagee, without inquiry of the mortgagor, and without obtaining from him a certificate that he had no defence to the mortgage. In thus taking the mortgage without inquiry the bank took the risk of a defence by the mortgagor. This principle has been so frequently ruled that it is needless to cite the cases. It is equally well settled, however, that the assignee of a mortgage takes it subject only to the equities between the mortgagor and the mortgagee, and not to equities between the mortgagor and a prior assignee of the mortgage : Blair *v.* Mathiott, 10 Wright 262 ; Downey *v.* Tharp, 13 P. F. Smith 322.

Had the bank made inquiry of Reineman, the mortgagor, prior to taking the assignment from Bell, it would have learned that the mortgage was given by Reineman in part payment of a tract of coal which he had bought from the estate of Benjamin Morrow, deceased ; that subsequently he entered into an arrangement with the said A. S. Bell and one John M. Tiernan, by which the said coal was to be held by Reineman for the joint benefit of the three, the agreement reciting that " one-half is to be owned by Adam Reineman, and the other half by John M. Tiernan and A. S. Bell ; but the deed for it is made to Adam Reineman ;" that he, Reineman had paid the entire purchase money, one-half $4,500 in cash, and the other half by giving the mortgage in controversy ; that Bell and Tiernan had covenanted to pay the mortgage as soon as it became due ; that Bell did pay the money to the mortgagee, but instead of having the mortgage satisfied of record, procured an assignment of it, and subsequently assigned it to the bank.

We are of opinion that these facts amount to payment by the mortgagor. Of course the mere covenant by which Bell and Tiernan bound themselves to pay the mortgage, standing alone, would not be sufficient. But we have the additional fact that Bell actually paid the mortgagee, and paid him with the money of the mortgagor ; that is to say, with the unpaid purchase-money left by Reineman in the hands of Bell and Tiernan for that very purpose, and which they had jointly covenanted to so apply. It was, therefore, a payment by Reineman by the hands of Bell. The act of Bell in taking an assignment of the mortgage to himself was a fraud. His covenant bound him to pay the whole of the mortgage, and he had no equity which would justify him in keeping it alive to compel contribution from Tiernan, or for any other purpose.

The foregoing facts were in the direct line of the title of the bank, and inquiry of the mortgagor would have disclosed them. They were equities between the mortgagor and the

[Appel v. Byers.]

mortgagee, and the principle ruled in Blair v. Mathiott and Downey v. Tharp does not apply.

The judgment is reversed and judgment is now entered for the defendant below upon the point reserved.